The next matter, No. 23-1426, Prince Belo Pai vs. Merrick v. Garland. At this time, would counsel for the petitioner please introduce himself on the record. Good morning, Your Honors. May it please the Court? Sang-nyeok Kim for petitioner. Chief Judge Barron, may I reserve one minute for rebuttal? You may. Thank you. So there are three buckets of claims, jurisdiction, past persecution, and future persecution. And let me start with jurisdiction. So government's position is the mixed question of law and fact is not reviewable because of 1252A-2C. But at the same time, in its jurisdiction section of the brief, it cited Guerrero-Las Prieas. And they are actually in conflict because the Supreme Court said mixed question of law and fact is still reviewable despite 1252A-2C because it is a question of law under 1252A-2D. So that conflicted statement indicates that there's confusion about the law of the question of law. And we asked the Court to clarify that case. In fact, this Court has already made the same ruling in Arzabin v. Garland in a different context. So this Court should clarify that question of Fabian Soriano v. Spahr. Now let me move on to the past persecution. There are two reasons why this Court should vacate the agency's denial. Number one is Petitioner's first flight because of the immediate threat of genocidal killing of Crown people to which he belongs, whether that constitutes past persecution. Petitioner raised this claim before the BIA. The record composed that conclusion. Petitioner, as a two-year-old, had to be separated from his father, had to go through all the checkpoints. The meaning of the checkpoint in the context of the civil war in Liberia was life or death because that's where both sides, the rebel forces, the government forces, were clarifying the ethnicity of people crossing those points. And he survived that and went to the refugee camp. And because of this Liberian civil war, he lost his mother in the refugee camp. He was to suffer at the border outside of Liberia. All of this record, completing that conclusion, the legal argument that Petitioner made, but the BIA decision is silent about this point. The BIA's point is only limited to the physical suffering that happened at the border between Sierra Leone and Guinea. But that, yes, that was one claim that Petitioner made. But his claim was more than that one time physical suffering. As to that point, if we were to rule for you on it, we wouldn't have to decide the jurisdictional question because that's a point of law that you're making, that error, correct? Yes, Your Honor. Yes, Your Honor. So that first claim, the absence of the agency analysis on the forced flight because of the immediate threat of genocidal killing, that is a legal error the agency committed. Now, the second reason— And the consequence of that is, if you're right about that, is then we don't have the finding that would have to be made that would disentitle you to the presumption about future harm and therefore any subsequent aspects of the ruling also can't stand up. Is that the idea? That's correct. And if this Court agrees with Petitioner on the past persecution claim, then it would be proper for this case to go back to the agency to address from the scratch because if Petitioner prevails past persecution and we think the record compels that conclusion, then the presumption of future persecution kicks in and that's where the burden will be shifted to the Department of Homeland Security to rebut that claim under preponderance of evidence. But that issue is not before this Court. The agency has not opined on that point. So we think that that back-catcher of the past persecution should be sufficient and adequate for this Court to set this case, vacate the decision in its entirety, and send the case back to the agency. Counsel, what do you have to say because below there was a finding that whatever was happening was a non-state actor. What would you respond to that? So, Your Honor, that goes to the second point of our reason why this Court should vacate the past persecution claim. So the IG found that it was not past persecution only because the attackers were not acting on behalf of the Liberian government. But this Court's case law is very clear. The non-state actors can also be cognizable persecutors. Of course, there is additional burden for a petitioner to make, which is the unwilling or unable standard. And the logic of this standard is to connect the harm with the foreign government, which has a duty to protect the asylum seekers with holding applicants, such as the petitioner. So that analysis is absent. The government doesn't appear to dispute that agency actually addressed that question, but government believes that agency did not need to address that question because evidence is too thin, and we disagree. And we have two responses. Number one, if the agency really believed that that evidence was too thin, then it was agency's job to say so. But then here, there's no opinion from the BIA or the IG. The second response is even assuming that agents rejected this claim with silence, the record compels the conclusion that there's clear connection between the harm that he had. But then you potentially run into the jurisdictional question. To rule for you on that point, we'd have to resolve the jurisdictional question in your favor. Yes, Your Honor. But if the Court decides the case is in the first round, then the Court does not need to reach the jurisdictional question. Counsel, if we agree with you on the first round of past persecution that you argued, I just want to go back to do we have to vacate, or is it arguably clear that the immigration judge found no evidence to support future persecution, regardless of how the past persecution was analyzed? Because it just seems to me, looking at the BIA decision, that what they're saying is conditions have completely changed in Liberia. It's just a completely different situation now. And so would really us ruling in your favor in past persecution require us to vacate and send it back? Could you address that? Yes. So two responses. Number one is when we look at the IG's finding and conclusion, IG did not say that there was no future persecution or there's no likelihood of harm at all. What the IG said was because the condition has improved, despite the fact that ethnic tension still goes on, despite the fact that there's no post-Civil War measures kicking in, still the burden was with the petitioner that he did not satisfy the burden. So that's the first response. I don't think the agency meant that there was no future persecution. The ruling was that petitioner did not meet the burden with the evidence. Our second response is in practice and as a matter of law, who bears the burden is pretty important. So again, if the petitioner prevails in the past persecution, then presumption kicks in, then it will be the department's burden to show by preponderance of evidence. And that would be very different from how the agency has decided. And again, in order for this court to address whether this court could still deny there's no future persecution, when the court agrees with the past persecution, then this court would have to assume so many things. Number one, the assumption that the case went back, the assumption that the department has produced enough preponderance of evidence to review, assumption what the IG would have decided, assumption how the BI would have addressed it, and then the court applies a substantive evidence review. I understand your argument, but just to refer you specifically to what the IJ said. So I'm looking at pages 11 to 12 of the IJ's decision, and the IJ says that it finds that his claim for fear of return to Liberia is basically focused and rests on the Liberian Civil War, which ended 20 years ago. That's not going to change on a remand. So again, the IJ says the war is over. So if that's what his fear of future persecution is based on, there's just not enough there. What would change on remand? Even if it's clear, you know, it's the government's burden to rebut the presumption, what would change about the basic fact that the war has been over for 20 years? So just because the war ended in 2003, it does not mean that petitioner cannot satisfy the burden. Really, the question is whether he would be harmed on account of his current ethnicity. And IJ did acknowledge that despite the improvement of country conditions, there are still tensions still going on, and some of the former human rights violators also became the government civil servant of the country. So I don't think that the – I understand that IJ relied on the end of the civil war as somewhat important evidence, and we are not disputing that, but that does not mean that petitioner cannot satisfy his burden. And I don't think the IJ meant that there was no possibility of persecution ever based on the evidence. I see that my time is up. Unless, of course, there are any questions, I can address in the rebuttal time. Thank you. Thank you. At this time, please introduce yourself on the record and begin. Good morning, Your Honors. Joseph O'Connell on behalf of the Attorney General. Mr. Pei's challenges based on Guerrero-Las Breas are inapposite for two reasons. First, the petitioner can't raise these challenges for the first time in a reply brief, and those arguments should be deemed way for that reason. But also, Guerrero-Las Breas doesn't apply in this instance because the facts are not undisputed. Guerrero-Las Breas only applies in the application of undisputed facts to a legal standard. Here, the real question is in the civil law. With respect to this issue of not having addressed the evidence that was described as not having been addressed, that doesn't seem to have anything to do with Las Breas, correct? I think, if I'm understanding Your Honor's question, he raised certain factual challenges in his reply. No, he's saying that certain evidence was never considered by the agency. Certainly, yeah. I'll get to that point. Could you get to that right now? Yes, I will. So in terms of evidence that he says was never addressed, the immigration judge specifically addressed the fact that he fled Liberia when he was two years old. But the BIA's ruling focuses only on that instance at the border. I think the focus on the one instance of physical harm that he described was very reasonable because that basically provided the basic facts. Is there any indication or words in the BIA decision that indicates it considered the other evidence in ruling as it did? I don't think there's any explicit statement. But as this court held in Mendez Barrera, there is no requirement that the board wax long eloquent in carrying out its adjudicated role, and the agency findings can be explicit or implicit. And so as long as the agency's decisional calculus is discernible, the board need not illuminate that. And how do we know it wasn't just focused from its words on that incident at the border rather than the broader tableau that was being portrayed? I think the board's decision necessarily encapsulates the immigration judge's decision, which, again, addressed the flight from persecution. If we disagreed with you on that, then arguably the question then becomes, do we remand? Right. With respect to the burden would then shift as to future persecution because there would be a presumption of future persecution. And with respect to that, what's the significance in the government's view of the IJ's conclusion that the country conditions report note that impunity for individuals who committed human rights abuses, including atrocities during the Liberian Civil War, remained a serious problem? And the attendant analysis of the IJ saying that, nonetheless, he hadn't met his burden to show that he would still be harmed? So in that instance, I think the IJ was acknowledging the fact that the Truth and Reconciliation Commission in Liberia still hasn't come together. They're delaying going forward on it in the most recent country reports. But that's not to say that the IJ didn't make the finding that there is no likelihood of future persecution because, again, the Civil War ended more than 20 years ago. Even if the burden was on the government? Yes, in terms of a fundamental change in circumstances. But, again, because he didn't meet the past persecution claim. The IJ had no reason to address that question. Right, exactly. So doesn't that support the idea of remanding so the IJ can? I don't believe so because I don't believe there was any error in the IJ's position. I understand if there's no error. But if there were an error by not addressing the evidence on the BIA's part, wouldn't that support the idea of a remand so that the IJ could then pass on whether or not, withstanding the burden shift? I think there's some merit to Judge Rickman's suggestion that this remand might be futile based on the fact that there is no real well-found fear of future persecution and the Civil War ended more than 20 years ago. And his future persecution claim was really based on his status as a criminal deportee. It was based on both. It was based on both. Because the IJ makes it clear he goes on to his second claim. A lot of the testimony was based on his fear of being imprisoned in Liberia as a criminal deportee, which he weighed before the board and he weighed before this court. So if I could address this Guerrero-Lasbrilla just briefly. So I don't believe Guerrero-Lasbrilla applies in this instance because it only applies to undisputed facts to a legal standard. And again, here the question really revolves around the identity of the men at the checkpoint in Sierra Leone in 1996-1997. The reason Mr. Pei's withholding claim failed is because he didn't establish who these men were. In other words, Mr. Pei didn't show that he was harmed by the Liberian government or that the Liberian government was otherwise responsible for protecting him in terms of the unable or unwilling analysis. So the petitioner cited al-Zaibin, but in al-Zaibin the court noted that it was dealing with settled facts and whether those settled facts satisfied the bona fide marriage standard. The wholly factual issues, such as who the men were who beat Mr. Pei when he was six years old in Sierra Leone, are not subject to judicial review because of the criminal review bar. I would also like to note that the IJA also made note of the proper legal standard for unable or unwilling determinations, and the board went so far as to say that the harm suffered must be committed by either government action or acquiescence. Again, there's no reason to address the factual issues in this case, but I think it bears noting that there's no country conditions evidence showing that the Liberian rebels patrolled the border between Guinea and Sierra Leone in 1996 or 1997. The evidence Mr. Pei cites of Liberian rebels in Sierra Leone dates to March 1991 and not 1996 or 1997. And again, this incident occurred in Sierra Leone. It wasn't even in Liberia when this incident happened. So let me ask you, you're referring to these findings that were made in the agency about him not being able to prove this or at least to demonstrate the evidence. So would you say that this is really, you know, based on the evidentiary rulings, we can't even review this? You can always review legal claims and constitutional claims. Okay, but where's the legal claim? Because that, to me, seems to be just very specific, factual findings of lack of evidence or weight of the evidence. If that is the case, doesn't that do away with everything? Most of the factual claims, I would agree with you, Your Honor. But in terms of the claim there, he says that the agency failed to consider relevant evidence. I think that would arguably – Well, that's a legal claim, yeah. Right. That was the only thing that would arguably be considered a legal claim of which this court has jurisdiction. But again, I don't believe that's – I think that's a meritless claim. I think the I.J. addressed what he needed to address in his decision, and the Board is not required to enumerate or identify – Where does the I.J. address the claim that they're making, that if your entire country is being subject – there's ethnic cleansing happening, and so you and your family have to leave because of threats that you will be killed if you stay, that that's enough to show past persecution. Where does the I.J. address that? The I.J. definitely said that he and his mother fled when he was 2 years old, and I can – But that's just noting a fact. That's not addressing a claim of persecution. Right. Is there anywhere where the I.J. addresses that claim of persecution? I would argue that the recitation of the testimony saying that he had to flee with his mother when he was 2 years old is, in essence, addressing that evidence. It's addressing it, but it's not giving a reason to reject it. It's not necessarily rejecting it. It's just sort of focusing on the one instance. But the relevant thing is, did it give a reason for rejecting it? Where does it give a reason for rejecting that aspect of the claim? I don't believe the immigration judge rejected it. I believe that the immigration judge considered it, but focused more on the actual instance of physical harm. That sounds like it ignored it. If it didn't reject it and it didn't focus on it, the only other option I can think of is it ignored it. Aside from the fact that the immigration judge stated it in his decision. Yeah, but he didn't – you have to have a reason for rejecting it. There's also no reason – there's also no obligation to enumerate and discuss every single piece of evidence. Again, he was 2 years old and he fled with his mother at the time. And, again, the immigration judge – It's a fairly serious claim of past persecution. The claim is, the reason I was persecuted in the past was because of my ethnic identity, and they were trying to cleanse that ethnic identity. It's a fairly standard type of claim of persecution. Where does the IJ give a reason for saying that fails as a claim? I think it is incorporated into the IJ's decision insofar as he acknowledged it. But the flight itself from persecution, while obviously it was a negative event, there was no physical harm. You don't need physical harm. Threats of physical – I mean, are you really arguing that if your country is engaged in ethnic cleansing and you're part of the ethnicity that people are being murdered and you have to flee, that that's not persecution? I'm not arguing that that's not part of the persecution analysis. But, again, the agency focused on what was the single instance of physical harm that he focused on. But why focusing on that and ignoring the much bigger argument, which is that the reason I'm at this checkpoint is because I'm being forced to flee because there's widespread ethnic cleansing? He was at the checkpoint because he was fleeing Sierra Leone, not Liberia. He had already fled Liberia. The fleeing was – Correct. He's there because he's forced to flee his country because his people who were crowned are being murdered. Right, but he's still – So if an IJ addresses the small issue of what happens at one moment when you're fleeing and not the bigger issue of why you've been forced to flee, how is that – I would respectfully argue that the fact that the IJ acknowledged it in his decision is enough to say that the IJ considered it. And, again, these are the things that Mr. Pei focused on in his brief to the board. He focused on the one instance of harm. I think that's at AR-35. Are you saying he didn't make this other argument? He stated it, but – Well, what's the difference between stating and making it? He made a statement saying that he fled. Stated isn't making it, but stating it is rejecting it. No, he made – Because you're saying all the government did was state it. All that the IJ did was state it, but that counts as a rejection. But when he stated it, he didn't make it. It's a little bit of a paradox. I'm saying that the IJ stated it, and in stating it, he acknowledged it. Yes, but he rejected it. I'm not saying that he rejected it. I'm saying he considered it and found it insufficient. And the more important thing is that his past persecution claim was based primarily on this incident that didn't happen in Liberia. It happened several years later in Sierra Leone on the border with Guinea. So, I mean, that was the crux of his past persecution claim was the fact that he got hit on the head with the butt of a rifle by unknown individuals. And the IJ's decision was basically focused on that instance of physical harm. And so the IJ very reasonably concluded that we don't know who these people are, and so we can't really redound against the Liberian government. So we can't really say that this is the Liberian government or these are people the Liberian government is responsible for controlling. And so that was the crux of the agency decision. So, I mean, the best I can say is that the fact that the IJ recounted this evidence is enough to say that the IJ considered it in his decision. But again, there's no reason given for rejecting it. I would respectfully disagree with the characterization that it was rejected. I would say that it was considered, and it didn't really factor into what it was that he was focusing on in his past persecution claim. He was obviously focused on the instance where he was hit in the head and he was later rendered deaf in one ear by that rifle butt. Can I ask you, the petitioner here was removed? Yes. Notwithstanding the orders that we have, which made that wrong. I can briefly discuss that. Again, I'm here to contritely apologize for the government. What happened is the DHS moved this particular Mr. Pei out of the Boston area and they moved him to Batavia, which is not within the First Circuit. They normally deal with Second Circuit cases. And so apparently what I've been informed by the DHS is that this DHS officer was not privy to the First Circuit's rule of the continuing legal obligation. So basically what I understand is he looked at the docket, saw that his stay of removal was denied by the court, and then went ahead with removal. And what steps are being taken so that that won't happen again? They have been informed. This is basically a human error. As I understand it, there were notes in the computer saying that there is a continuing legal obligation to inform the Department of Justice and then the court that there is any change in removal plans. But aside from, again, this is a single instance of human error. I'm just still not understanding. Is the error that he read the note and didn't follow it or is the error that the note didn't get to him because you said he wasn't privy to it? I believe that he was not privy to the First Circuit's rules regarding the case. And is that because there's something in the system that wouldn't apprise him of it? And is what's being done to make sure that people like that are apprised going forward? Or is that that he was apprised of it, but he didn't understand what it meant? As I understand it, it's the latter. I can get more information from DHS if the court requires it. But in this instance, I believe it was one person who overlooked notes in the computer. And again, because they're in New York and not Boston, they're not as familiar with the... And when something like this happens, is it the practice to try and get the person to come back or the idea is tough luck? If the court, of course, orders him to come back, DHS would do their best to bring him back, as I understand it. But again, the court did already deny, even though we are in violation of Rule 18, the court did deny his motion for a state of removal previously. So that is what this DHS officer was looking at. Again, the DHS is supposed to inform the DOJ, and we are supposed to inform the court of any change in removal plans, and that didn't happen. Thank you. And so, yeah, in any event, the government apologizes for any oversight or accident in this rule. But unless there's any other questions on the merits, my time is up. Thank you. Thank you, Counsel. At this time, if Counsel for the Petitioner would reintroduce himself on the record, he has a one-minute rebuttal. Good morning, Your Honors. Sang-Yup Kim for Petitioner. I would just make a very brief point about the waiver for feature of jurisdiction issue. So Petitioner's opening brief said, this court has jurisdiction over all claims, and as a response, government challenged that point. And as a reply, we further explained why this court had jurisdiction over mixed question of law and effect. So I don't think it's waived. And also, the subject matter jurisdiction, I just do not think that such question can be waived or forfeited under the ordinary forfeiture rule. But this court does not need to decide that question if the court were to decide based on the first round. The absence of analysis does not permit this court judicial review and vacatures required. Unless the court has any questions, we rest. Two things. One, what was the basis for the removal? The basis of removal was aggravated felony, the possession of the weapon. And does Petitioner have anything they want to say to the court with respect to the removal having occurred despite the rule? Your Honor, this is the third time that I am aware, that we are aware that the government violated local rule. First one is in Guerra Castaneda, where the government violated, deported in violation of even state order. There's another case, I don't recall the specific name, but that's another case where there was no state motion, the government also violated local rule 18. And every time the government apologized to the court and promised that it would not happen again. The reason, if I may continue, if I finish, the reason why local rule 18 is important as a matter of practice for a non-citizen is because we trust the system. So we rely on local rule 18 to determine whether that person is getting actually removed. The government alleges that the petition has been notified about the remover. It happens almost every week that ICE officers, you may be removed, you may be removed. But because of so many reasons, that may not actually happen. So we don't actually know the behind the scene, whether the person will be actually removed. And that is why we rely on local rule 18. We rely and we await until the official acknowledgement from the government through the Office of Immigration Litigation to notify the court and notify the party to determine when the person could be removed. But that just did not happen here. And I really hope that this violation will not happen again in another case. And is there a suggestion as to how that could be made so it wouldn't happen that you have or not? I think this court can provide an order, making some recommendation,  so that this violation would not happen. That's only because, again, the government has always apologized to the court. But the consequences can be really grave for many non-citizens and petitioners. Thank you, Your Honors. But there's no motion before us with respect to having him return during the pendency of the proceedings? No, Your Honor. And also that would depend on how this court adjudicates the petition. If the court grants the petition, then certainly we would consider the motion to bring him back. But if the court denies the petition, it would be proper not to file such a motion. Thank you, Your Honors. I guess I ask because the claim is that he's at risk of persecution where he is. That's why you're trying to withhold removal. Yes, Your Honor. So he's there now. I understand. And he is not in a great position. And because of the violation of Rule 18, we were not able to implement the important communication level and protection level. But we finally have been in contact with the person, and the person is in a not perfectly safe setting. Safe enough for now that you're comfortable with the situation, or not asking us to do anything to change the situation? That's correct, Your Honor. Okay, thank you. Thank you. Thank you, counsel. That concludes argument in this case.